UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Omni Consulting Group, Inc.,

        Plaintiff,

                                  **Hon. Hugh B. Scott**

                                  01CV00511

        v.

                                  **Report**
                                    **&**
                                **Recommendation**

Marina Consulting, Inc. and
Pilgrim's Pride Corporation,

        Defendants.

Before the Court are the following: Pilgrim's Pride Corporation's ("Pilgrim") motion for summary judgment (Docket No. 82) and Omni Consulting Group, Inc.'s ("Omni") motion for summary judgment as to liability. (Docket No. 84).

**Background**

Omni commenced this action asserting various contract and commercial tort claims against Marina Consulting Inc. ("Marina") and Pilgrim. Omni is a New York corporation previously doing business under the name Principal Consulting, Inc. ("Principal"). Omni alleges that it contracted with Marina to provide skilled personnel to perform computer system consulting and related services. Under a "Master Agreement" between Omni (Principal) and Marina, Marina would provide personnel to service Omni's clients. See Master Agreement dated

1

December 31, 1997 attached as Exhibit A to the Complaint.   The Master Agreement provides that it is to be governed and construed under the laws of the State of New York and that the exclusive venue rests in the courts of Erie County, New York. (Master Agreement at ¶ 11.)

In a separate "Technical Services Agreement," Omni (formerly Principal) agreed to provide computer and consulting services to Pilgrim, which is headquartered in Texas.  See Technical Services Agreement dated December 31, 1997 attached as Exhibit B to the Complaint.  Under this arrangement, Marina provided Omni with the services of Robert Vance ("Vance")[1]. Omni then designated Vance to work on the Pilgrim account.  Omni billed Pilgrim $175 per hour and paid Marina $100 per hour.

Omni commenced this action alleging various breaches of the respective contacts, as well as tortious interference with a contractual relationship, theft of trade secrets and civil conspiracy. Omni points to a non-solicitation provision in the Master Agreement which expressly states:

> Marina Consulting Inc. agrees not to solicit any of [Omni's] clients that [Omni] introduced Marina Consulting Inc. to during the time of this agreement and for a period of twelve (12) months after the termination of this agreement.

Master Agreement at ¶ 9.

Further , Omni relies upon ¶ 14 of the Master Agreement with Marina which states, in relevant part:

> Marina Consulting , Inc. hereby acknowledges, agrees and represents: ... Not to solicit, induce or otherwise communicate with (whether orally or in writing) any existing or identified clients of [Omni] for which Marina Consulting Inc. has been contacted by [Omni].  This non-compete provision is in consideration of the

---

[1] Vance is the sole owner, officer and employee of Marina. (Docket No. 82-2 at ¶ 2). Unless otherwise stated, the Court hereafter uses "Vance" to refer to both Vance and Marina.

> compensation to Marina Consulting Inc. under this agreement and shall remain in full force and effect for a period of twelve (12) months after any termination of the same or for the same period after completion of services.

Master Agreement at ¶ 14.

Finally, Omni's claim against Pilgrim is based upon similar non-solicitation language in the Technical Services Agreement, which states:

> Pilgrim's Pride agrees not to hire, offer employment to, or otherwise utilize the services of any personnel supplied by [Omni], without prior written consent of [Omni]. In the event that Omni consents to allow Pilgrim's Pride to employ or otherwise utilize the services of personnel supplied by [Omni], other than on the terms outlined in the "Request for Services," [Omni] will require Pilgrim's Pride to compensate [Omni] in an amount to be determined by [Omni].

Technical Services Agreement at ¶ 7.

It is undisputed that Omni introduced Vance to Pilgrim and that Vance performed services for Pilgrim from January of 1998 until approximately September of 1998 pursuant to the Master Agreement and the Technical Services Agreement. (Docket No. 82 Exhibit F [hereafter referred to as the "Vance Deposition"][2] at page 21, ) In September of 1998, Omni attempted to contact Vance at Pilgrim but was informed that Vance no longer worked there. (Docket No. 87-4 at ¶ 10). According to Vance, some time in September of 1998, Charles Kennedy, a personnel official at Pilgrim, advised him that Pilgrim no longer needed Vance's services. (Vance

---

[2] In what strikes the Court as an unnecessary environmental waste, the parties in this action deemed it necessary to separately attach four (4) copies of the transcript of Vance's deposition to the instant motions papers. (Docket No. 82, Exhibit F; Docket No. 87-1; Docket No. 92-3; and Docket No. 93-2). The Court reminds the parties of the Local Rule 56.1(d) of the Western District of New York which provides that a document already served and filed in conjunction with a motion need not be included in subsequent responsive filings.

Deposition at page 25). Two weeks later, according to Vance, Kennedy contacted Vance and asked if he was available to perform more work for Pilgrim. (Vance Deposition at page 39). At about that time, Vance incorporated another entity, Eagle Technology Services ("Eagle")(Vance Deposition at pages 39-42). In October of 1998, Vance began working exclusively for Pilgrim (through Eagle) and bypassing Omni. (Vance Deposition at page 26). Vance stated that he continued to perform some of the same functions as during his prior work for Pilgrim (through Omni), but that he was also given additional duties. (Vance Deposition at page 46). Vance's hourly rate was increased to $125 while he worked for Pilgrim through Eagle.[3] In addition, Vance's brother-in-law also began working for Pilgrim through Eagle at the beginning of 1999 (Vance's Deposition at page 27). Vance stated that he did not recall but acknowledged that it was "possible" that he previously discussed the idea of working directly through Pilgrim. (Vance Deposition at pages 29, 44). When asked if he had any conversations with anyone at Pilgrim about reestablishing a relationship to eliminate Omni to reduce costs, Vance replied: "I can't recall." (Vance Deposition at page 49).

In October of 1999, one year since Vance stopped performing work for Pilgrim through Marina (and Omni), and arguably coinciding with the expiration of the twelve month non-solicitation and non-compete provisions of the Master Agreement and the Technical Services Agreement, Vance once again started using the Marina corporate entity as his official employer

---

[3] Under this arrangement, it appears that Vance made $25 more per hour than he received while working for Pilgrim through Omni, and Pilgrim paid $50 per hour less than it paid for Vance's services going through Omni.

for his work at Pilgrim. (Vance Deposition at page 28).[4] When asked why he decided to once again perform his work for Pilgrim through Marina, instead of Eagle, Vance stated:

> "Hmmm? I decided to go to work through Marina Consulting, since it was my corporation and cut out the middleman." (Vance Deposition at page 28).

Asked why he did not do that when he went back to work for Pilgram in October of 1998, Vance responded, "I didn't think about it then." (Id.) After it later was revealed that Vance incorporated and owned Eagle as well, he was asked why he needed a second corporation to serve as his nominal employer for his work at Pilgrim. Vance stated "tax sheltering" as the reason why he incorporated Eagle rather than working through Marina. (Vance Deposition at page 40). When asked if he was trying to avoid his obligations to Omni under the Master Agreement, he responded, "Not that I can recall." (Vance Deposition at page 41).

The complaint in this matter asserts the following claims against Pilgrim: breach of contract (Count Two); tortious interference with a contractual relationship (Count Four); and civil conspiracy (Count Six).[5] Pilgrim seeks summary judgment alleging that ¶ 7 of the Technical Services Agreement is an unenforceable restrictive covenant. Further, Pilgrim asserts that Omni's tortious interference claim must fail because Omni cannot prove that Pilgrim was aware of the terms of the Master Agreement between Omni and Marina. Omni cross-moves for partial summary judgment as to liability against Pilgrim under the terms of the Technical Services Agreement.

---

[4] Vance continued to work almost exclusively for Pilgrim until July of 2000 when he left to go work for another corporation. (Vance's Deposition at page 35).

[5] The complaint also asserts similar claims against Marina (Counts One, Three and Six). In addition, the complaint includes a theft of trade secrets claim against Marina (Count Five).

5

**Discussion**

**Summary Judgment**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra.  Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir.2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting

the non-movant's case is also insufficient to defeat summary judgment." *Id.*; Rochetti v. New York State Dept. of Motor Vehicles, 2005 WL 2340719, *4 (E.D.N.Y.,2005).

If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Agreement Not to Hire Omni Personnel**

Pilgrim argues that the covenant in ¶ 7 of the Technical Services Agreement lacks temporal, geographic or subject matter limitations, and is therefore unenforceable. Omni asserts that ¶ 7 is not a "restrictive covenant," but that even if it is construed as a restrictive covenant, it is reasonable and enforceable. Omni asserts that the Technical Services Agreement constitutes an unambiguous contract that is enforceable under New York law. [6]

---

[6] The parties do not address which state law applies with respect to the contract claims in this matter. The contract at issue was executed between Omni (a New York corporation) and Pilgrim (a Delaware corporation, with relevant operations in Texas). The Technical Services Agreement does not contain a choice of law provision. (Docket No. 82, Exhibit C). Because this action was filed in a district court within the State of New York, New York's choice of law rules

Under New York law, a breach of contract claim requires that plaintiff prove (1) a valid contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages caused by the breach. Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir.2000); Gibbs & Soell, Inc. v. Armstrong World Industries, Inc., 2005 WL 615688, *3 (S.D.N.Y.,2005). Omni argues that traditional contract analysis should be applied in this case. In support of this view, Omni cites to Career Blazers of White Plains, Inc. v. Northern Homefunding Corp., 194 Misc.2d 518, 755 N.Y.S.2d 211 (White Plains City Ct. 2003). In Career Blazers, Northern hired a individual assigned by Career Blazers (a temporary employee agency) notwithstanding its agreement with Career Blazers not to directly hire the individual within 90-days of the termination of her assignment with Northern. There, the state court construed the contract between Northern and Career Blazers as a typical commercial contract between two entities and enforced the terms without analysis as to the reasonableness of any restrictive covenant. The Court notes that in Gibbs & Soell, Inc. v. Armstrong World Industries, Inc., 2005 WL 615688, (S.D.N.Y.,2005), the Court held that a similar contract fell outside those contracts which are

---

apply. See Schiavone Const. Co. v. City of New York, 99 F.3d 546 (2nd Cir. 1996); Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941). It is possible, under New York's choice of law rules, that the law of different jurisdictions may apply to the various tort claims and contract claims in a given action. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1540 (2nd Cir. 1997); Chapelle v. Beacon Comm. Corp., 1993 WL 465312 at *2 (S.D.N.Y. Nov.12, 1993), appeal dismissed, 84 F.3d 652 (2d Cir.1996). However, Pilgrim's Memorandum of Law in support of its motion relies almost exclusively on New York law. (Docket No. 83). Omni also relies upon New York law. Based upon this apparent agreement, and inasmuch as no party has presented the Court with information upon which to make a determination that any law other than New York law applies, New York law should govern the determination of the validity of the provisions of the Technical Services Agreement. (See Independent Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc. 919 F.Supp. 149, 152 (S.D.N.Y. 1996).

construed as containing restrictive employment covenants.  In Gibbs,  the plaintiff entered into an agreement with Armstrong under which Gibbs would provide public relations services to Armstrong.  Under the terms of the agreement, Armstrong agreed not to hire any Gibbs employees for a period of one-year following the termination of the agreement.  After the agreement between Gibbs and Armstrong was terminated, but prior to the expiration of the one-year period, Armstrong hired a Gibbs employee.  In granting summary judgment for Gibbs, the Court stated: "It is important to note that this is not a restrictive covenant in an employment contract. Here the parties simply agreed not to hire away employees from one another. Accordingly, the analysis is not the same as if it had been a restrictive covenant in an employment agreement." Gibbs, 2005 WL 615688 at *4.  The Court went on to reject Armstrong's arguments that the provision was ambiguous, and construed the contract under rules applicable to a typical commercial agreement.  In the instant case, the provision at issue is similarly unambiguous, and is analogous to typical anti-raiding contracts between corporate entities.  These cases, distinguish between commercial contracts providing personnel services from individual employment contracts containing restrictive covenants.  See Glenn v. Diabetes Treatment Centers of America, Inc., 116 F.Supp. 2d 1098 (S.D. Iowa, 2000)(An anti-raiding provision is not subject to the same strict time and geographic area limitations as a covenant not to compete.)  Pursuant to this line of reasoning, under the unambiguous terms of the Technical Services Agreement, Pilgrim agreed not to hire any personnel supplied by Omni without reaching an agreement with Omni as to compensation.  Pilgrim breached this provision when it hired Vance in October of 1998.

Pilgrim seeks to analyze the non-solicit covenant as having the same limitations as

9

similar covenants in an employment contract.[7]  The Court notes that the Master Agreement between Omni and Vance is not the subject of the instant motions.[8]  Notwithstanding, some Courts have held that such contracts are analyzed under a simple rule of reason, balancing the competing public policies in favor of robust competition and freedom to contract. See Baker's Aid v. Hussmann Foodservice Co., 730 F.Supp. 1209, 1214 (E.D.N.Y.1990); Winston Franchise Corp. v. Williams, 1992 WL 7843, at *6 (S.D.N.Y.  1992); DAR & Associates, Inc. v. Uniforce Services, Inc., 37 F.Supp.2d 192, 197 (E.D.N.Y.,1999).  Under this view, the Court must consider (1) whether the plaintiff has demonstrated a legitimate business interest that warrants the enforcement of the covenant; (2) the reasonableness of the covenant in terms of scope and duration; and (3) the degree of hardship enforcement of the covenant would inflict upon Pilgrim. DAR, 37 F.Supp.2d at 197.

That Omni has a legitimate business interest favoring enforcement of ¶ 7 is readily apparent.  Omni is in the business of providing consulting personnel to its clients. Omni's services include locating and training (if necessary) and matching personnel to meet the needs of its clients.  If Pilgrim, or any of Omni's other clients, were free to directly hire the personnel

---

[7]  New York courts disfavor restrictive covenants in the employment context and will generally enforce them only to the extent they are reasonable and necessary to protect valid business interests. BDO Seidman v. Hirshberg, 93 N.Y.2d 382 (1999); Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 N.Y.2d 84 (1979).

[8]  As noted above, the contractual provision at issue is not a non-competition agreement between an employer and an employee.  Instead, it is a commercial agreement between two corporations for the provision of services.  Under the Technical Services Agreement,  Omni agreed to locate, train (if necessary) and place personnel to perform "computer system services" with Pilgrim in exchange for Pilgrim's agreement to pay for these services and, among other things, to refrain from offering to employ "or otherwise utilize the services of any personnel supplied by" Omni without prior written consent and compensation. (Docket No. 82, Exhibit C, ¶ 7).

provided by Omni, and thus bypass paying Omni a fee for locating and placing the personnel, Omni would not be able to maintain its business.

Pilgrim does not argue that the enforcement of the provision would pose a hardship to Pilgrim (other than the fact that it would have had to pay Omni the rate it agreed to pay for Vance's services in the Technical Services Agreement). Instead, Pilgrim argues that the provision is not reasonable because it lacks any temporal or geographic limitation. Pilgrim does not articulate any basis to find that the absence of a geographic limitation in ¶ 7 renders that provision unreasonable. The reasonableness of any contractual provision must be determined in light of the contextual circumstances. The record reflects that Vance lived in California when originally assigned to Pilgrim by Omni and that he did not have to move to Texas to provide the contracted services for Pilgrim (Vance Deposition at pages 22, 34-35). In light of the nature of the computer services underlying the claims in this matter and the fact that such services could have been performed by Vance for Pilgrim almost anywhere, the lack of a geographic limitation in ¶ 7 of the Technical Services Agreement does not impact the reasonableness of the provision under the facts of this case. Indeed, the restriction in this case applied only to Pilgrim's ability to hire a single individual. Thus, lack of a geographic restriction is not relevant to any analysis of the reasonableness of the provision at issue in this case.

Pilgrim argues that to the extent that ¶ 7 lacks a temporal restriction, the provision is unenforceable as it is more expansive than necessary to protect Omni's legitimate business interests. The cases principally relied upon by Pilgrim in this regard (Docket No. 83 at page 8) are factually distinguishable from the case at hand. Slomin's Inc. v. Herbert Grey et al., 176 A.D.2d 934 (2d Dept. 1991), involved a non-compete agreement between the plaintiff and Grey.

Grey was an owner of a heating oil business purchased by Slomin's. At the time of the purchase, Grey entered into an agreement with Slomin's not to solicit fuel oil customers in five New York counties "in perpetuity." Such an agreement is more factually analogous to a restrictive covenant in an employment contract inasmuch as it impacted Grey's ability to earn a livelihood. The provision at issue in this case does not impact Pilgrim's ability to maintain its business. Instead, it memorialized Pilgrim's recognition that there was a value to Omni's service of locating, training and assigning personnel; that Omni's business would be effected by taking an individual away from Omni's stable of personnel; and that Pilgrim agreed to compensate Omni should it decide to do so. Any restriction placed upon Pilgrim to find computer personnel outside of Omni's personnel roster, should it choose not to compensate Omni as the contract required, is not the equivalent of, or analogous to, the restriction in <u>Slomin's</u>. This same analysis distinguishes <u>Kraft Agency Inc. v. Delmonico</u>, 110 A.D.2d 177, 494 N.Y.S.2d 77 (4th Dept. 1985), which involved a similar non-compete agreement relating to the sale of an insurance agency.

Notwithstanding these factual distinctions, the lack of any temporal restriction is troublesome, particularly as to the calculation of damages into the future were Vance still to be employed by Pilgrim. However, the Court may, under New York law, impute a missing term to enforce such a covenant. The Court dealt with this issue in <u>Unisource v. Valenti</u>, 196 F.Supp. 2d 269 (E.D.N.Y. 2002). There, it was held:

> If a court finds a limitation to be unreasonable, it can "blue pencil" the covenant to restrict the term to a reasonable geographic limitation, and grant partial enforcement for the overly broad restrictive covenant. ... The geographic term of the Agreement will be reasonable if reduced. The court need not make a determination of what precise geographic range would be reasonable, however, because under any reasonable interpretation, Anthony Valenti is

Case 1:01-cv-00511-RJA-HBS   Document 101   Filed 02/23/07   Page 13 of 18

>    prohibited from starting a competing business here in Lake Success
>    or Syosset. Thus, the court finds the restrictive covenant to be
>    reasonable in scope.

Unisource, 196 F.Supp.2d at 277.  The New York State Court of Appeals recognized this doctrine in Karpinski v. Ingrasci, 28 N.Y.2d. 45, 52 (1971).  There the court found that a covenant precluding an oral surgeon from competing with another oral surgeon in five New York counties was not invalid because it was unlimited as to time.  The Court of Appeals also recognized the Court's ability to limit an "unreasonable restraint down to appropriate size and enforc[e] it ... to the extent necessary to accomplish the basic purpose of the contract insofar as such contract is reasonable." Karpinski, 28 N.Y.2d. at 52.

   The facts of the case at hand warrant application of this legal principal. The provision as a whole is not overbroad.  Without drawing any conclusions as to the transparency of the events[9] surrounding Vance's separation from Omni and hiring by Pilgrim, it is not unimportant that Vance was hired by Pilgrim only two weeks after Pilgrim advised Omni that Vance's services were no longer needed. This represents a clear violation of the terms in Technical Services Agreement knowingly agreed to by Pilgrim.  Analogous to the facts in Unisource, here any reasonable temporal restriction would have encompassed more than a two week period. *Under the circumstances of this case*, ¶ 7 of the Technical Services Agreement would be reasonable if the restriction precluding the hiring of Vance by Pilgrim was one-year from the termination of the agreement – the same temporal restriction agreed to between Omni and Vance in the Master Agreement. (Docket No. 87-4, Master Agreement at ¶ 9).  Using the terms of the Master

---

[9] The parties do not argue that Vance's use of a variety of corporate identities impacts the analysis as to whether ¶7 of the Technical Services Agreement is enforceable.

Agreement as a guidepost in this matter is appropriate inasmuch as that agreement evidences Omni's expectation as to the length of time Vance was not be employed by one of Omni's clients after the termination of the agreement.  The restriction in §7 of the Technical Services Agreement would not serve its intended purpose if Pilgrim were to be precluded from hiring Vance even after Vance was no longer contractually restricted from pursuing employment with Omni's clients, including Pilgrim.  At that point, the hiring of Vance could no longer be considered a depletion of Omni's personnel roster.  Thus, a provision restricting Pilgrim from hiring Vance beyond that date would not be reasonable.

Limited as such, ¶ 7 of the Technical Services Agreement is reasonable and enforceable. Aside from its argument that ¶ 7 is unenforceable, Pilgrim has failed to demonstrate the existence of any material issue of fact as to its liability under the terms of that provision.  Thus, it is recommended that Pilgrim's motion for summary judgment as to the breach of contract claim be denied, and that Omni's motion for partial summary judgment as to liability with respect to that claim be granted.

**Omni's Tortious Interference Claim**

Omni also asserts that Pilgrim tortiously interfered with the Master Agreement between Omni and Vance.  In order to establish tortious interference under New York law, Pelosi must show: "(1) that a valid contract exists; (2) that a third party had knowledge of the contract; (3) that the third party intentionally and improperly procured the breach of the contract; and, (4) that the breach resulted in damages to the plaintiff." Albert v. Loksen, 239 F.3d. 256, 274 (2d. Cir.

2001); Pelosi v. Schwab Capital Markets, L.P., 462 F.Supp.2d 503, 516 (S.D.N.Y.,2006).

It is undisputed that a valid agreement existed between Omni and Vance. Omni argues that Pilgrim was aware of the Master Agreement and induced Vance into breaching the agreement causing damages to Omni. Pilgrim asserts that summary judgment is appropriate inasmuch as Kennedy, Pilgrim's personnel officer, stated in an affidavit that he was unaware of the actual terms of any agreement between Omni and Vance. (Docket No. 83 at page 9; Docket No. 92-2 at ¶ 11). Omni argues that inasmuch as Kennedy admits that he was aware that a contractual relationship existed between Omni and Vance, he must have been aware that the contract precluded Pilgrim from hiring Vance. (Docket No. 94 at page 19). As noted above, at his deposition Vance acknowledged the "possibility" that he discussed the possibility of leaving Omni to work directly with Pilgrim with Kennedy prior to the termination of the Technical Services Agreement or Master Agreement. The extent of those conversations is not fully set forth in the record before the Court. In any event, a question of fact exists as to the extent of Kennedy's knowledge (or anyone else at Pilgrim) of the terms of the Master Agreement between Omni and Vance. Pilgrim also argues that because Vance testified at his deposition that he did not believe he, as opposed to Marina (his corporate identity) had an obligation to Omni (Vance Deposition at page 28), that Marina had no intention of complying with the Master Agreement and therefore there could be no tortious interference on Pilgrim's part. (Docket No. 83 at page 11). A factual issue exists as to the credibility of Vance's deposition testimony in this regard as well as to Marina's intention to comply with the terms of the Master Agreement. Theses factual issues preclude the grant of summary judgment for either party with respect to Omni's claim for tortious interference.

**Civil Conspiracy Claim**

Lastly, Omni asserts a civil conspiracy claim against the defendants. To make out a claim of civil conspiracy, plaintiffs must allege the underlying tort, plus four additional elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. Fisk v. Letterman, 424 F.Supp.2d 670, 677 (S.D.N.Y.2006).

Pilgrim initially asserts that this claim must fail because it is derivative of the tortious interference claim of which Pilgrim also sought dismissal. Inasmuch as the a question of fact precludes the dismissal of the tortious interference claim at this time, the civil conspiracy claim cannot be dismissed simply on the ground that it is a derivative claim. Pilgram also asserts that Omni has failed to present any evidence to establish that Pilgrim induced Vance to breach the Master Agreement between Vance and Omni. The same questions of fact which preclude the grant of summary judgment with respect to the tortious interference claim, rule out the grant of Summary Judgment with respect to the civil conspiracy claim.

**Conclusion**

Based upon the above, it is recommended that Pilgrim's motion for summary judgment be denied, and Omni's motion for partial summary judgment be granted to the extent that Pilgrim is liable for breach of ¶ 7 of the Technical Services Agreement.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report &

Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District**

**Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 23, 2007